IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRI L. EVOLA                                                    PLAINTIFF


              v.                          CIVIL NO. 19-2072


ANDREW M. SAUL, Commissioner
Social Security Administration                                     DEFENDANT


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sherri L. Evola, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.    **Procedural Background**:

Plaintiff protectively filed her current applications for DIB and SSI on May 1, 2017, and April 19, 2017, respectively, alleging an inability to work since April 19, 2017, due to two back surgeries.  (Tr. 50, 180, 187).  An administrative hearing was held on October 11, 2018, at which Plaintiff appeared with counsel and testified. (Tr. 30-48).

By written decision dated October 31, 2018, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 12).  Specifically, the ALJ found Plaintiff had the following severe impairments: a

1

disorder of the back. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb, balance, crawl, kneel, stoop, and crouch.

(Tr. 14). With the help of a vocational expert, the ALJ determined Plaintiff could perform her past relevant work as a pharmacy technician, as generally performed.

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 30, 2019. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 2). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the administrative hearing held before the ALJ on October 11, 2018, Plaintiff, who was fifty-three years of age, testified she had obtained an associate degree. (Tr. 33). The record revealed Plaintiff's past relevant work consists of works as a pharmacy technician and a nurse assistant. (Tr. 46).

The pertinent medical evidence for the time period in question reflects the following. On June 14, 2017, Dr. Stephen Drake, a non-examining medical consultant, opined that Plaintiff did not have a severe mental impairment. (Tr. 55). On September 19, 2017, after reviewing the records, Dr. Brad F. Williams affirmed Dr. Drake's opinion. (Tr. 81).

2

On July 5, 2017, Plaintiff was seen by Dr. Wilson Cruz-Leal for anxiety. (Tr. 325-327). Plaintiff also complained of lower back pain. Plaintiff was noted as an everyday smoker. Plaintiff reported difficulty concentrating, excess anxiety and palpitations. Plaintiff also reported moderate back pain. Upon examination, Dr. Cruz-Leal noted Plaintiff had a normal affect and memory. Plaintiff ambulated normally. Plaintiff exhibited normal movement of the head and neck and had a normal gait and station. Dr. Cruz-Leal assessed Plaintiff with mixed anxiety and depressive disorder and low back pain. Plaintiff was prescribed medication.

On July 5, 2017, Plaintiff also underwent x-rays of the lumbar spine that revealed a surgical fusion of L5-S1 and DJD at L2-3 level with narrow space and osteophytes. (Tr. 321-323). A x-ray of Plaintiff's left hip was negative and a x-ray of the right hip showed no visible abnormalities.

On July 21, 2017, Dr. Charles Friedman, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch and crawl; and that manipulative, visual, communicative and environmental limitations were not evident. (Tr. 56-58). On September 17, 2017, after reviewing the records, Dr. Dan Gardner affirmed Dr. Friedman's opinion. (Tr. 82-84).

3

On October 3, 2017, Plaintiff was seen by Dr. Cruz-Leal for bilateral back and shoulder pain. (Tr. 366-368). Plaintiff reported her shoulder pain radiated to her neck and arms and her back pain radiated into her hips. Plaintiff reported she was trying to obtain disability. Upon examination, Dr. Cruz-Leal noted Plaintiff had a normal affect and memory. Plaintiff exhibited normal head and neck movement and ambulated normally. Dr. Cruz-Leal noted normal alignment and no muscle atrophy of the cervical spine. Plaintiff had no range of motion limitation of the shoulders but exhibited tenderness. Dr. Cruz-Leal assessed Plaintiff with bursitis of the shoulder, bilaterally; neck pain; and low back pain. Plaintiff was prescribed medication and sent for x-rays of the cervical spine that revealed degenerative disc disease. (Tr. 379).

On December 27, 2017, Plaintiff was seen by Dr. Cruz-Leal for body aches, diarrhea, nausea and vomiting. (Tr. 362-366). Plaintiff denied driving impairments with the use of medication. Upon examination, Dr. Cruz-Leal noted Plaintiff had a normal affect and memory. Plaintiff had normal movement of her head and neck. Plaintiff ambulated normally and exhibited a normal gait and station. Plaintiff was assessed with low back pain and anxiety and prescribed medication.

On March 19, 2018, Plaintiff was seen by Dr. Cruz-Leal for a medication refill. (Tr. 360-362). Dr. Cruz-Leal also noted Plaintiff had a MRI scheduled for the next day. Upon examination, Dr. Cruz-Leal noted Plaintiff had normal movement of her head and neck and that she ambulated normally. Plaintiff exhibited a normal gait and station. Plaintiff was assessed with degenerative joint disease involving multiple joints and low back pain. Plaintiff was scheduled for a MRI of the lumbar spine.

On March 28, 2018, Plaintiff underwent a MRI of the lumbar spine that revealed postoperative change at L5-S1 with no significant central canal or neural foraminal stenosis; and mild degenerative disc disease at L2-3. (Tr. 378).

On May 10, 2018, Plaintiff was seen by Dr. Cruz-Leal for an emergency room follow-up. (Tr. 357-359). Dr. Cruz-Leal noted Plaintiff had been involved in a motorcycle accident six days ago. Plaintiff reported she smoked one package of cigarettes a day. Dr. Cruz-Leal noted Plaintiff had been diagnosed with a rib fracture in the emergency room. Dr. Cruz-Leal noted Plaintiff reported she had been working. Upon examination, Dr. Cruz-Leal noted Plaintiff had normal movement of her head and neck, that she ambulated normally and that she had a normal gait and station. Dr. Cruz-Leal assessed Plaintiff with a closed fracture of the left rib. Plaintiff was prescribed medication.

On June 5, 2018, Plaintiff was seen by Dr. Cruz-Leal for back pain. (Tr. 354-357). Plaintiff was noted to be an everyday smoker. Upon examination, Dr. Cruz-Leal noted Plaintiff exhibited normal movement of the head and neck. Plaintiff ambulated normally and had a normal gait and station. Plaintiff was assessed with lumbar radiculopathy, lumbar region and anxiety. Plaintiff was prescribed medication.

On July 28, 2018, Plaintiff was seen at the NWA Neuroscience Institute by Candace Harper, P.A. (Tr. 381-383). Nurse Harper noted Plaintiff was being seen for an initial lumbar spine evaluation. Plaintiff reported that one to two months ago she was riding in a car and experienced increased right sacroiliac area pain with radiation to the right buttocks. Plaintiff reported having difficulty bending, rolling over in bed and sitting. Upon examination, Nurse Harper noted Plaintiff was alert and in no acute distress. Plaintiff exhibited lumbosacral

spine tenderness and pain with hip rotation. Plaintiff had a negative straight leg test. Plaintiff had a normal gait and station and normal muscle strength and tone in her lower extremities, bilaterally. Nurse Harper assessed Plaintiff with sacroiliac joint pain. Sacroiliac joint injections and a chiropractic referral were recommended. Plaintiff was instructed to call if her symptoms worsened or she failed to improve.

On August 14, 2018, Plaintiff was seen by Dr. Cruz-Leal for bilateral abdominal pain and diarrhea for the past six months. (Tr. 484-486). Upon examination, Dr. Cruz-Leal noted Plaintiff exhibited left quadrant tenderness and left flank tenderness. Plaintiff ambulated normally and had a normal gait and station. Plaintiff was assessed with chronic diarrhea of unknown origin and anxiety. Plaintiff was referred to gastroenterology and psychiatry.

On August 22, 2018, Plaintiff was seen at the NWA Neuroscience Institute by Brent Weilert for back pain. (Tr. 384-386). Plaintiff reported her pain was in the right low back and right sacroiliac region. Plaintiff reported her pain radiated to the right buttock and right hip. Plaintiff indicated the onset of this pain was two months ago. Plaintiff's pain was exacerbated by standing, walking and driving and relived with ice and rest. Plaintiff reported she went to a chiropractor but felt worse after the appointment. Upon examination, Dr. Weilert noted Plaintiff had lumbosacral tenderness and pain with extension to the right. All motor groups were within normal limits of strength and tone, bilaterally. Plaintiff was found to have normal memory and attention. Dr. Weilert assessed Plaintiff with sacroiliitis and recommended an injection.

On September 12, 2018, Plaintiff underwent a CT of the abdomen that revealed multiple small bowel loops with thickened mucosa and luminal narrowing consistent with

inflammatory bowel disease. (Tr. 452). A subsequent colonoscopy performed on February 13, 2019, well after the relevant time period, showed a normal ileoscopy and colonoscopy exam. (Tr. 390). In March of 2019, Dr. Hrair Simonian assessed Plaintiff with abdominal pain and diarrhea and prescribed medication. (Tr. 410-411).

## III.    Applicable Law:

The Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Combs v. Berryhill, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." Id. The Court will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. Id.

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

7

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

IV.    **Discussion:**

Plaintiff argues the following issue on appeal: 1) the RFC is inconsistent with the record; and 2) Plaintiff cannot return to her past relevant work.[1]

A.    **Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v.

---

[1] The Court has incorporated Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner

Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities.  See Social Security Ruling 96-3p.  The claimant has the burden of proof of showing she suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").  After reviewing the record as a whole, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

**B.    Subjective Complaints and Symptom Evaluation:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5)

functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.   A review of the record revealed that during the relevant time period, Plaintiff reported she was able to take care of her personal needs, do household chores, clean and cook for her boyfriend, shop in the grocery store once a week for one to two hours, read, watch television, play with her grandchildren and watch their sporting activities, and visit with others by going out to lunch or to the movies.

With regard to Plaintiff's back impairment, the record revealed Plaintiff underwent back surgeries in 1993, and 2010, and did well until her pain worsened around 2014, when she was working as a CNA. Treatment records during the time period in question revealed Plaintiff repeatedly exhibited a normal gait and station, normal muscle tone and strength and normal movement of the head and neck.  In 2018, Plaintiff underwent a MRI of the lumbar spine that revealed postoperative change at L5-S1 with no significant central canal or neural foraminal stenosis; and mild degenerative disc disease at L2-3.  The Court finds, based on the evidence of record, that there is substantial evidence supporting the ALJ's finding that Plaintiff's back impairment was not disabling during the relevant time period.  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant

was not disabled even though she had in fact sustained a back injury and suffered some degree of pain); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

With regard to Plaintiff's alleged mental impairment, it is noteworthy that Plaintiff did not allege a disabling mental impairment in her applications for benefits. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression is later developed). The record also failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

While Plaintiff indicated in reports that she completed with her application for benefits that her medication caused drowsiness and frequent urination, there is no evidence showing that Plaintiff reported negative side effects to her treating physicians. Richmond v. Shalala, 23 F.3d 1441, 1443-1444 (8th Cir. 1994.). The Court notes, Dr. Cruz-Leal noted on at least two occasions that Plaintiff's medication did not impact her ability to drive.

The Court would also note that while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The

record further revealed that Plaintiff was able to come up with the funds to support her smoking habit throughout the relevant time period.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity.

### C.    ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC."  Id.

In finding Plaintiff able to perform light work with limitations the ALJ considered Plaintiff's subjective complaints, the medical records, and the evaluations of the non-examining medical examiners.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined during the relevant time period.  See Hutton

v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).  After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

> **D.     Past Relevant Work:**

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work.  Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991).  Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work.  Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1.  The actual functional demands and job duties of a particular past relevant job; *or*
>
> 2.  The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform Plaintiff's past relevant work.  See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant

at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted).  Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a pharmacy technician, as generally performed.

**V.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of  March 2020.

/s/  *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE